Good morning, Your Honors. Mark Alpert for Appellant and Cross Appellee Los Altos. I'd like to reserve three minutes approximately for rebuttal time. You know now that you have to watch the clock if you're going to reserve. I'll do my best. I'll do my best. In reviewing the decisional law that's out there in the Ninth Circuit and other courts, it strikes me that mobile home park owners under rent control are pining away to get into the federal courts. But we seem to have a case of unrequited love because the district courts keep saying no. And I think it's the combination of Williamson County and the issues, doctrine of issue preclusion seems to have put a vice on access to the federal courts for proceeding with federal takings claims. Well, it's a common complaint, but there we have it, Williamson. What do we do with it? That's right. I think, however, though, in this case, I think we have a unique set of facts that I think threads the needle, that actually if there is a case where there should be access to the federal courts for federal takings claims, I think it's this case. And I think it's because of the way that the state court adjudicated, or rather didn't adjudicate, the underlying takings claims. Well, part of it starts a little before that, and that has to do with what the district court does initially. That is, whether the district court chooses to use the Younger line or the Pullman line of abstention. Doesn't that signal whether or not you're going to be able to have an England exception? Here, if, as I understand it, the district judge chose to follow Younger, correct? That's true, Your Honor. But I actually think you need to look to the substance of what the court was doing as opposed to whether the court called it Younger abstention or some other abstention. Well, it may be. But if the judge says I'm going to apply Younger, I think we have to understand that he's read the case, and at least the district judge is aware that if you have Younger extension, this is never coming back. And you can't get an England doesn't make any difference at all unless you get Pullman extension. Isn't that true? Well, I would disagree. In this case, the district court actually stayed the Federal proceeding rather than dismiss it. That suggests to me you disagree with my comment upon Younger and Pullman? Or you disagree on what the judge did? I think that I disagree. Well, there is certainly the case law that the Court referred to in terms of the case. Well, I want to get a starting point. Do you agree that you cannot use England if they use Younger extension? I think that you cannot use England if the reason that the district court refused to hear the case was because the district court concluded this is not a case that the Federal court should be hearing. Do you understand what Younger extension is? Let me start with that. Well, my general understanding of Younger extension is where the district court refuses to hear the case because it believes the case should be adjudicated in the State court. That's right. It's never coming back. That's right. You stay in the State court. Right. And what I'm suggesting to you is while the district court may have used a reference Right. But I think you're jumping ahead on the question. I think Judge Wallace just asked if the district court properly uses Younger extension, that's that, right? Well, I think I think that may be right. But again, my point is what you have to do is look to what was behind the decision of the court not to hear the case. Yeah. Well, you're saying you didn't use Younger extension, but I think you're getting way ahead of Judge Wallace's question. This case, procedurally speaking, this case is no different than any of the other Ninth Circuit cases where you've had a, for example, San Remo, where you've had a district court which refuses or the two cases that San Remo relies upon, Dodd, the two Dodd cases, where the district court does not hear the cases because initially because it wants to have the State court hear the State compensation question. The whole point of Williamson County was a rightness question. And that rightness question gets to this point that if you go back to Williamson County, it says we're not going to undertake looking at what are hypothetical Federal questions. And a takings under Williamson County, a Federal takings question is a hypothetical question under the conclusion that you don't have a taking without compensation until you first have a State court or a State say no to compensation. Under Williamson, do you have to exhaust your additional remedies within the State? Do you have to take an appeal, or can you rest on what the superior court said? You can rest your my belief is you can rest on what the superior court did. Now, an appeal might be relevant to the futility doctrine. But if you look back at Williamson County, again, what it's saying is we're not going to deal there's a general rule that says Dodd, the first Dodd case is great on this. It talks about there's a general rule that you've got access to the Federal courts. But what Williamson County says is we're not going to hear that until there's a definite question, until the State has answered the question, is this a taking without compensation? Once the State says no, you've got a taking without compensation. You don't have to ask a second time to the court of appeal. You have a dispute that is no longer a – where there – it's no longer a – an unclear dispute. It's a defined dispute. You have a State that said no. The only question that then comes up, now that the State is no exhaustion – There's no exhaustion requirement. There is no exhaustion requirement to meet that, to meet Williamson County. You're just eliminating the uncertainty about whether the State will grant compensation. The real question then becomes, in the course of asking for State compensation, having done that, has the State court adjudicated any issues or facts that are dispositive of Federal claims? That's the issue that comes up after Williamson County. And, in fact, if you look at this – this Ninth Circuit's decisions, including the San Remo decision, and I know Judge Thomas was on that panel. If you look at the second paragraph in which the Court is – is really summarizing that decision, what did the Court say in San Remo? It said, we find that the California State court applied a standard that is equivalent to the – to the Federal standard in adjudicating the takings claims. If you look at Dodd 1 and Dodd 2, the same question gets raised. Did the State court apply a standard that was comparable to the Federal standard in adjudicating constitutional claims? The – In this – in this race judicata thing, claim preclusion, California uses the primary rights theory, and I assume we have to also. If I understand what happened in this case, what the lower court decided was that the primary right involved is whether you got a fair return on your investment. The – the State held that you did get a primary – a fair return. And what there's – what the district judge is saying, okay, now, you have to pursue that because there's collateral estoppel. There's issue preclusion. If you lose on it, you're never going to get into the Federal court. What's wrong with that? Well, first of all, I think the Court a little bit inaccurately says what – what the district court did. Oh, yeah. I'm – I'm getting through to the question, but, yeah, go ahead. What the district court did was it said the State court struck your England reservation. So the State court never even looked at the question of what really in substance was adjudicated in – in State court. That's the way I read the district court's decision. It basically took the position State court struck an England reservation. That means you didn't appeal that decision. And because you didn't appeal that decision, I can't look at, you know, anything else. You've got race judicata. Yeah. I understand that, but I was – I'm wondering if the district judge had looked at it and said primary rights theory, primary right is return, they decided you have a good return, therefore, it can only be decided in the State case. What would your response be to that? Here's what my response would be, is that, really, you have a different primary right for very important reasons. First of all, the – the decision in the petition for writ of mandamus, in essence what it was, was a decision by the State court that the administrative body who concluded that you were – the park owner was earning a fair return was not an abuse of discretion. That's what it was. You didn't – there was substantial evidence to support the decision by the rent board that the – that this body, that the – excuse me, mobile home park was earning a fair return. It's not a preponderance of evidence type standard. But more basically, the fair return standard goes to a really – a fundamentally different question and a fundamentally different right. In fact, it goes to the question of whether or not the city of Capitola has a right to set rents at $210 near Santa Cruz Beach for whatever legitimate government purpose. It goes to the question of, can I validly set rents at $210 a month? Now, that is considered under an extremely deferential standard under substantive due process. The takings question is fundamentally different in nature. In fact, the takings analysis assumes – it assumes that the city of Capitola has a right to set rents at $210, even though the rents in Bakersfield are $300. It assumes that, and then it says, okay, State, you can set rents at $200 an hour or $200 a month. But having done that, have you caused a taking? Fundamentally different question. It hasn't – my reading of the California cases, and I want to see what you have to respond to that, is that the California courts appear to have assumed that if you have received a fair return, that that tells you that you don't have a takings cause, a takings claim, a valid takings claim. That is, they assume that fair return is the equivalent of an adjudication on the question of the taking. Well, first, if they did make that assumption, Your Honor, that would be the best argument that we could make for why Federal – the Federal court retains jurisdiction. But I don't – My follow-up question to that is, that appears to me to be – that appears – that's my reading, sort of, of what the California courts have effectively done. And my question is, have we approved that in manufactured housing? I don't believe that's the case. I think if you look back at the Carson Gardens case, when this – this body had this Santorino case before, they – it discussed the Carson Gardens case. The Carson – in Carson Gardens, the – Is that Carson Gardens or Carson Harbor? Carson Harbor. That's right. I'm sorry. In Carson Harbor, one of the issues that was addressed was, is California law inconsistent with – with Federal law? And one of the arguments for why California law that was raised was inconsistent with Federal law is because California had, in effect, reinstated the Aigins rule. It had said your only right is this fair return hearing under rent control on a particular petition for writ of administrative mandamus to review that. That was the argument made by the park owner in Carson Harbor. And – but the Ninth Circuit in Carson Harbor said – Harbor said, no, we don't – we don't read it that way. We look at Kavanaugh and Gallin, which are the two major Supreme Court cases that talk about fair return, and we read it this way. We read it as saying you have to first try to get your remedy through a, quote, Kavanaugh adjustment. You have to first make that effort. And, in fact, that may ameliorate any taking. For example, if Los Altos in this case had gotten its rents increased to $900 or $1,000 a month through the fair return procedure, that may have, in fact, prevented a taking. So Carson Harbor says you first – they read California law as saying you first have to try to get this rent increased. And if – after not getting that. Mr. Lankford. Counsel, let me point you to the specific phrase that I have in mind. It's on page 1031 of manufactured housings. We characterized – and this is a fairly recent decision, and, of course, this panel is bound by the decision. We said that MHC's claims in federal and state court – and on the next page, we actually dropped a footnote and explained what those claims were, including takings, claims, equal protection, substantive due process – all involve a single primary right, the right to receive a fair return on its investment. Now, doesn't that – didn't our court assume that fair return answered the question of whether there has been a taking? Actually, not. You're referring – maybe one kind of taking. You're referring to the Palomar case, I believe, and – Well, I'm quoting out of manufactured home communities, page 1031. Okay. I see where they've cited – the Court has cited Palomar, but I'm reading directly from our holding about MHC's claims in federal and state court. Right column, right in the middle of the right column on page 1031. Well, let me tell you what I know about the Palomar case, because that's what it cites. And I'll see if I can track down this other case, maybe for rebuttal. Well, you'll have 28 seconds for rebuttal right now. Okay. The Palomar case, it became – Which you're using. Excuse me. Actually, I'm not thinking of the Palomar case. Maybe I'm thinking of the correct case. The only issue – is this San Jose, city of San Jose? Yes. Okay, this is the case I'm thinking about. This is what – in the San Jose case, there was really only one issue that was in dispute. In San Jose, they adopted a rent control ordinance in which the – they required the park owner to estimate – to estimate a base year under an MNOI-type methodology, even though they didn't actually have the financial ability to do that, or they claimed they didn't have the records to do that. That's what was at issue in that case. And the only – the only challenges that actually that language refers to were the facial challenges that the park owner raised to that requirement. That park owner made the argument that this – and of course, all of those issues in terms of calculating a fair – they do relate only to a fair return. In that decision, the court did not address the as-applied takings claims. In fact, it said the as-applied takings claims were not a right. In fact, they had never sought a rent increase application in that case. The only issue that was being decided in that case was, did the requirement to set base rents using an estimated year result in a facial taking, facial deny of substantive due process? And in fact, they did raise multiple theories, but they all centered around that same question in calculating a, quote, fair return. And in fact, they all related to the question of whether it was a fair return. Of course, fair return is a substantive due process standard. You're now way over your time, sir. I am, sir. Thank you, counsel. No, you were addressing the question, but it looked like you were ready to launch into a new topic. I've got more I could, I'm sure. Yes, of course. We are under some time constraints, so we are enforcing the time deadlines this morning. Counsel. Good morning. May it please the court. I'm Henry Heeter, and I represent the city of Capitola and its rent review board. I'm not going to really address the issues raised by the city's cross-appeal. Unless the court has any questions, I think it's been adequately briefed, and the simple issues are really straightforward and rather simple, I think. Thank you. I think as the court has engaged counsel in oral argument, the race judicata and issue preclusion issues in this case depend on the interplay of Williamson-Reitman's doctrine, England Reservation, and the two abstention doctrines, Pullman and Younger. And the real issue is whether or not this is a situation where you get two bites at the same apple, because that's what's really happening here. And first of all, I don't think there's any Ninth Circuit case that say you get two bites at the same apple. Now granted, when you have Pullman abstention, the court retains jurisdiction over your federal claims and remands the state claims to state court to be litigated there for reasons of comedy and based on the hope that maybe resolution to state claims will moot the federal claims. But it doesn't allow you to litigate your federal claims in state court. You only get to litigate your state claims. Now, you don't get two bites at the same apple under Pullman abstention. Well, he's not asking for that. What he's saying is that this is not the same primary right. I understand your argument. And if it is not the same primary right, there's not two bites. So it seems to me you have to – it would be your burden to show us why he was wrong in his analysis that there's two primary rights involved here. I will, Your Honor. First of all, if you look at Williamson's rightness doctrine, I think rightness is an unfortunate term to use, but it's a term that's been used by the courts because it implies that somehow by going to state court, you can actually ripen your claim. And that's untrue. The only time you ever have a ripe takings claim in federal court is if at the time you file your federal action, you can convince the district court that you don't have an adequate procedural remedy in state court. If, for example, you believe that the state court is improperly or incorrectly applying federal constitutional takings law, then you have a futility exemption to Williamson, and you argue that you shouldn't be remanded to state court for your remedy because it's an inadequate remedy. So you do have that exception. But once your case is dismissed as unripe, then you can't assert an England reservation. You have to try your takings claims in state court. Otherwise, Williams would make no sense because it would say, well, you get to try your state takings claim in state court, but if you don't like the result, you get to come back to federal court and try them again. That would make absolutely no sense. I think Williamson has... That doesn't get to his point. If he goes to state court and it's a different primary right, then he's got... then there's no res judicata. And so it seems to me you still have to show us why it is that this was the same primary right that is the take the difference between a taking under the federal Constitution and a determination of whether some board decided he's getting sufficient return for his investment. Your Honor, first of all, I don't think it's a different primary right. I think he only has one in this case. But even if he did, I don't think that changes the analysis, and this is why. Under California rules, case law regarding claim preclusion, which is what this court has to apply, claim preclusion applies not only to claims that were made, but claims that could have been brought. So if the park owner in this case had more than one claim against the city of Capitola arising from this same nexus collection of facts, then under California law, you're not allowed to split your cause of action. If he had another primary right, it had to be asserted in that state action. And if it wasn't asserted in that state action, claim preclusion would apply even if it wasn't raised. I don't see it that way. I beg to differ. Under California law, there's only claim preclusion if it is the same primary right. That's the whole idea behind the primary right theory. So if there's a different primary right, then your opposition wins. Well, Your Honor, I think maybe on the issue of issue preclusion, if something isn't actually litigated in the prior action, you can bring it and not be barred by the resolution in another action. But if you bring an action and you forget or omit or decide for a related claim arising from the same nexus of facts, my belief is, and obviously this wasn't briefed, I don't think, in the briefs, that California law of claim approval says that if you had any cause of action arising from this rent control board proceeding, you are bound to assert it in one complaint, and if you don't, you're barred from thereafter asserting. I do believe that is the law. Even if it's a different primary right. Once you're in, you're in for a dime, in for a dollar. You have to assert all your claims in one action, whether you characterize them as one primary right or two. It's not just one apple, but I mean, if what you say is true, then what's the point of the England exception reservation? The point of an England reservation is when you're involuntarily in state court on state claims, the federal court has abstained under Pullman, which means it's retaining your federal claims. Let's assume, for example- Under your theory, you'd have to assert all the claims anyway, which would then- Pardon? Under your theory, you'd have to assert all the claims anyway, right? Not under Pullman abstention, Your Honor. I believe that's- I don't see how that makes- maybe I'm missing it, but I don't think that makes any sense- It claims- In terms of your prior argument. Under Pullman abstention, the state court would get the state claims remanded to it by the federal court. So it'd get part of the case, but not all the case. Yeah, but under your theory, you'd have to assert all the claims or else be barred by res judicata, right? If you're suing initially in state court- I see. Because you have to- Very fine, just saying. Under Williamson-Wright-Misser, whatever reason, then the state court's going to have all the claims before it. It's only under Pullman that you get this unique split of jurisdiction as to the different types of claims. And that implicates Mr. Alpert's point about the- his clever comment about unrequited love, that is that he can't get back into federal court. There's no way for him to get back into court. There is no way, Your Honor, and that's because of comedy. I mean, the Supreme Court in San Ramo has understood under Williamson that you're not going to get back to federal court. And the purpose of Williamson and the purpose of, I guess, Younger abstention, it says that this type of federal constitutional claim, out of reasons of comedy, is best decided at the state level. Is it your position- is it the city's position that if you've adjudicated a fair return, that that is conclusive on the question as to whether there has been a taking? Yes, Your Honor. I believe that- So the question- once you've determined that there's fair return, that automatically answers the question of taking. I believe so. Rate-setting cases, which is what rent control looks like, they don't really look like a Penn Central type case where you buy a piece of property hoping to do X with it, and then the city passes an ordinance preventing you from do X. It's a simple rate-setting case. Just like with public utilities, you have an administrative hearing. The only issue is whether you get a fair return. And underlying, you take any number of the takings theories alleged, you have to have the requisite economic impact. But going beyond this issue, let's assume, for example, that the district court in this case had exercised Pullman instead of Younger. In fact, it did indicate in the footnote that Pullman might also apply. And had held on to the federal takings claims. Even the San Ramo case indicates that if you have Pullman abstention and you do have an England reservation, it still behooves you as a litigant not to go beyond the state claims that you do have. And the problem that arises in this case is that if you do go forward and allege takings claims, as was done in this case, that are congruent with the federal takings claims, and they are, then you're going to lose on-issue preclusion because How do you ever get out of that box? It's a catch-22. It's Under California laws, you described it. You can't possibly get back to federal court, can you? Yes, Your Honor, but you do. The only way you get there is by through review by the Supreme Court, which granted is very rare. But it's just a recognition that these types of federal claims, out of comedy, on these two documents, are best decided in state court. And as long as the state courts accurately or correctly applying federal law based on case law, that's your remedy. And if you don't think the courts are going to apply, or if the case law is against you and you think that that's improper, they're misreading the U.S. Supreme Court decisions, then you have a futility exemption under Williamson. And that was alleged in this case, and the court disagreed. So you got an adequate procedural remedy in state court. Once you get your remedy, if you don't like it, you have an appellate process. But you can't come back to federal court and say, it'd be like a litigant in the Eighth Circuit, which has a different view of takings law than the Ninth Circuit. And he loses in the Eighth Circuit. He says, well, I'm going to file another lawsuit. I'm going to find a way to file a lawsuit in the Ninth Circuit somewhere. And say, well, the Eighth Circuit didn't correctly apply federal constitutional law, therefore you shouldn't look at it for race judicata purposes. Well, no. And the California courts are in the same way. They're bound by the U.S. Supreme Court. But they're not bound by Ninth Circuit law. They look to it for guidance. So what authority does the Superior Court have to strike an England reservation? The Superior Court under, I don't have the Civil Procedure Code section, has the right to strike extraneous or erroneous or incorrect legal allegations made in a complaint. And the reason the city brought the motion to strike is because we wanted to make it clear that we didn't think you could reserve these types of claims under Williamson or a younger abstention. Do we have, can we second guess that? No, Your Honor, I don't think so. I think, again, we have a ruling of law by a state court and by the state court of appeal. It's the state court of appeal that affirmed a fair return. It's the state court of appeal that affirmed the striking of the England reservation relying, in fact, on a Ninth Circuit case. Now, this court may disagree that the court probably shouldn't have stricken the England reservation, but you're getting into Rooker-Feldman territory when you do that. I mean, are you bound by the California court's decision that it was properly stricken? And the question is, would another California court raise judicata or issue? The Superior Court in December of 2006 struck the England reservation. This is the one for which there was no appeal. So we have a striking of an England reservation by the Superior Court, but we don't have, but the plaintiffs failed to take an appeal on that one. And my question is, are we bound by the Superior Court's judgment that it can strike an England reservation? I mean, this is a guy trying to say, look, I don't want you to adjudicate my federal claims. I want to take those into federal court. I'm going to reserve my right to do so. And the state court says, no, you can't do that. Can we second guess that as a way of protecting our own jurisdiction? No, Your Honor, because first of all, in the original complaint before this final decision by the Superior Court, in the first complaint, that court struck their England reservation. It went up on appeal. The California Court of Appeal affirmed the striking of the England reservation. It came back down to allow the park owner to allege any other takings claims it might think it had. I believe the California Court of Appeals did that because it thought that the district court had abstained under Younger, not under Pullman. Well, the, no, I think the district court actually, well, the district court- Not the district court, the California Court of Appeal. My recollection of that decision was that they agreed with the city that England reservations were only appropriate under Pullman and not Younger, which was, Pullman was exercised here. But let's assume for the sake of argument, we have a Pullman extension here and a proper England reservation. How can a state court strike a reservation of a federal right and have that enforceable in federal court? That's like saying you don't have a right to remove to federal court even though you need it, and that's affirmed on, you know, that's- I think that the- A little bit different, but it's sort of a non sequitur, isn't it? I don't think so, Your Honor. I think the state court has the right to rule on federal issues. When it does so, it's not bound by the Ninth Circuit. It looks to it for guidance, but it's bound by its own interpretations of the United States Supreme Court. It gets to decide those federal issues that are properly before it. And if you think that the California court erred, your remedy is to go up, I guess, all the way to the U.S. Supreme Court. But again, I think the court of appeal here did rely on Ninth Circuit decisions, which said that England reservations are only available in the context of Pullman. Unless the court exceeded its jurisdiction, and it may have done so by striking an England reservation. Your Honor, again, let's assume that the England reservation was proper, and then you fall back on issue preclusion, did- No, no, I'm just piercing through, because if we accept what you say is true, I think the implications for how we approach these kind of cases may have to shift. Well, I think this Court, the Ninth Circuit has held that England reservations are only available in the context of Pullman extension. Oh, yeah, that's a good question. And so I don't think the California court of appeal erred on that issue. You're down to 40 seconds. Do you want to summarize? I don't think I could do that in 40 seconds, Your Honor. Thank you. Any further questions? No. All right. Thank you both for the arguments. I'm sorry that we didn't have more time to hear, but we will consider the matter carefully. It's got a lot of interesting questions.
judges: Wallace, Thomas, Bybee